IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| **RANDOLPH ALLEN SHEARER,** | * | **CHAPTER 13** |
| Debtor | * | |
| | * | **CASE NO. 1:15-bk-00081-MDF** |
| **RANDOLPH ALLEN SHEARER,** | * | |
| Objectant | * | |
| | * | |
| v. | * | |
| | * | |
| **CADLEROCK JOINT VENTURE,** | * | |
| Respondent | * | |

## OPINION

Before me is the Objection filed by Randolph Allen Shearer ("Debtor") to the proof of claim filed by CadleRock Joint Venture, L.P. ("CadleRock") in the above-captioned bankruptcy case. Debtor argues that the claim should be disallowed because the unsecured mortgage deficiency was discharged in his 2004 Chapter 13 case. CadleRock counters that the claim was not discharged because Debtor's confirmed plan provided for regular payments on the note to continue notwithstanding the lien foreclosure. For the reasons discussed below, I conclude that the Objection should be overruled.

### I. Procedural and Factual History[1]

On May 26, 1999, Debtor executed a note (the "Note") in favor of Numax Mortgage Corporation in the amount of $35,000 along with a mortgage secured by Debtor's property at 222 Bosler Avenue, Lemoyne, PA. The mortgage securing the Note was in second position subordinate to the first mortgage of Indymac Bank, F.S.B. ("Indymac"). On December 7, 2004,

---

[1]This section of the Opinion adopts the Joint Stipulation of Facts filed with the Court on June 1, 2015. The Court also takes judicial notice of the filings in Case No. 1-12-bk-6676-MDF filed on November 19, 2012 and dismissed on January 12, 2015.

Debtor filed a Chapter 13 bankruptcy petition at Case No. 1:04-bk-07284-MDF. At the time Debtor filed his petition, the Note was held by Homecomings Financial ("Homecomings"). Debtor listed Homecomings as holding a secured claim in the amount of $33,703.73 of which $31,855.73 was unsecured. Homecomings filed a secured proof of claim for $38,703.73 with $4978.34 in arrearages.

On December 23, 2004, Debtor filed a Chapter 13 plan in which he proposed to pay Homecomings' arrearages through the plan and to make regular monthly payments outside the plan. After Indymac filed an objection, Debtor filed an amended plan (the "Amended Plan") that provided for the payment of arrearages through the plan to Homecomings, Indymac, and M&T Bank while maintaining current payments to the same creditors outside the plan. The Amended Plan was confirmed on June 29, 2005.

On March 23, 2005, Indymac filed a motion for relief from the stay after Debtor failed to make post-petition mortgage payments. The parties resolved the motion by stipulation, but after Debtor defaulted, Indymac obtained relief from the stay in July 2005. The property was sold at sheriff's sale on September 21, 2006.

On February 27, 2007, Debtor filed a motion seeking to modify his confirmed plan and a modified plan (the "Second Amended Plan"). In the motion to modify, Debtor provided a cryptic explanation for the modification stating that he "made a lump sum payment and subsequently fell behind in payments." Case No. 1:04:bk-07284-MDF, Doc. # 65. In the Second Amended Plan, rather than addressing each secured creditor separately, Debtor stated that defaults would be cured by monthly payments to the trustee "same as Amended Plan" and that regular payments would be made directly to creditors "same as Amended Plan." Case No. 1:04-bk-07284-MDF,

2

Doc. # 66. In other words, although Homecomings no longer was a secured creditor, Debtor proposed to pay its claim under the same terms he had proposed when Homecomings was a secured claim. Debtor successfully completed his payments under the Second Amended Plan and received a discharge on March 24, 2008.[2]

In 2012 Debtor again filed for relief under Chapter 13. Debtor listed CadleRock, which by this time had acquired the Note, as an unsecured creditor for a mortgage deficiency in an unknown amount with a disputed claim. CadleRock filed a proof of claim for the unsecured balance on the Note of $46,365.03. Debtor objected to the claim, but the objection was not resolved before Debtor moved to dismiss the case in January 2015.

On the same date he moved to dismiss his 2012 case, Debtor filed the current Chapter 13 case. Debtor again listed CadleRock as an unsecured creditor with a disputed claim. CadleRock filed an unsecured proof of claim of $54,668.71 to which Debtor objected asserting that the debt had been discharged in the 2004 case. CadleRock responded that the debt had not been discharged under the explicit terms of the Second Amended Plan. The parties agreed to submit the matter for resolution on stipulated facts and briefs, which have been filed with the Court.[3]

**II. Discussion**

The issue before me is whether CadleRock's unsecured claim was discharged in Debtor's 2004 bankruptcy case or whether the language in the Second Amended Plan obligates Debtor to

---

[2] Homecomings received $5788.79 on its arrearage claim through the Plan which provided for 13.75% interest on its $4978.34 claim.

[3] The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This is a core, non-*Stern* proceeding under 28 U.S.C. § 157(b)(2)(A) and (B). This Opinion constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure ("Fed. R. Bankr. P.") 7052, which is applicable to contested matters pursuant to Rule 9014.

3

Case 1:15-bk-00081-MDF    Doc 74    Filed 12/01/15    Entered 12/02/15 09:48:30    Desc
Main Document    Page 3 of 9

pay the balance of the Note in full. For the reasons discussed below, I conclude that the claim was not discharged in the 2004 case and is a valid unsecured claim in the within case.

### A. Prima facie validity of CadleRock's claim

In any proceeding involving an objection to a proof of claim, the claim is entitled to a presumption of prima facie validity, and the burden is on the objectant to overcome the presumption. "The burden of proof for claims . . . under §502(a) rests on different parties at different times. Initially, the claimant must allege facts sufficient to support the claim. If averments in the filed claim meet this standard of sufficiency, it is *prima facie* valid." *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992). Once a creditor makes out a prima facie case, the objector has the burden of producing sufficient evidence to negate the validity of the claim. *Id*. at 173-74. The objector must produce evidence that calls into question at least one aspect of the claim's legal sufficiency. If the objector successfully challenges the claim, the burden shifts back to the claimant to prove by a preponderance of evidence that the claim is valid. *Id.*

In the matter before me, CadleRock filed a proof of claim based on the Note it acquired after the mortgage securing the original loan was extinguished through foreclosure. Having asserted sufficient facts through supporting documents to establish the prima facie validity of its claim, the burden shifted to Debtor to negate its validity.

### B. Unavailability of discharge for claims treated under 11 U.S.C. § 1322(b)(5)

In relevant part, § 1328 provides that "after completion by the debtor of all payments under the plan, . . . the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt (1) provided for under section

4

Case 1:15-bk-00081-MDF    Doc 74    Filed 12/01/15    Entered 12/02/15 09:48:30    Desc
Main Document    Page 4 of 9

1322(b)(5) . . . ." 11 U.S.C. § 1328(a)(1). Section 1322(b)(5) states that a Chapter 13 plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any *unsecured* claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C. § 1322(b)(5) (emphasis added). The treatment of claims under § 1322(b)(5) is referred to as "cure and maintain."

It is critical to note that § 1322(b)(5) authorizes a debtor to "cure and maintain" *unsecured* as well as secured claims. This is precisely what Debtor chose to do in the Second Amended Plan. Thus, while Debtor eventually received a discharge under the Second Amended Plan, the debt to CadleRock, having been treated under § 1322(b)(5), was not discharged. *See In re Park*, 532 B.R. 392, 398 (Bankr. M.D. Fla. 2015) (holding that when payments on "long term debt" are maintained outside the plan the debt is excepted from discharge under § 1328(a)(1)); *Bryant v. Tidewater Fin. Co. (In re Bryant)*, 430 B.R. 516, 523 (Bankr. E.D. Wisc. 2010) (explaining that one of the "by-products" of curing debt arrearages in a plan while making post petition payments outside the plan is that the debt will not be discharged). Accordingly, having elected to make post-petition installment payments on the Note outside the Second Amended Plan, the balance due under the Note was not discharged.

C. *Debtor bound by confirmation order*

In further support of his objection to CadleRock's claim, Debtor argues that notwithstanding the language of the Second Amended Plan, he is not obligated to make these payments because 11 U.S.C. § 1322(c)(1) "prohibits" the curing of a default on a residential mortgage once foreclosure has occurred. Section 1322(c)(1) empowers a debtor to cure a default

5

on a mortgage up to the foreclosure sale, a right not available to all debtors under applicable state law. This right bestows a benefit on a debtor. It is intended to be used as a shield, not as a sword.

Debtor, however, is correct that the Second Amended Plan is flawed. The language in the Second Amended Plan providing for the payment of CadleRock's claim after its lien was foreclosed violates § 1322(b)(1). Section 1322(b)(1) provides that a plan may "designate a class or classes of unsecured claims, as provided in section 1122 of the title, but may not discriminate unfairly against any class so designated . . . ;" 11 U.S.C. § 1322(b)(1). "Four factors must be considered in determining whether a proposed classification scheme is proper: (1) Whether the discrimination has a reasonable basis; (2) Whether the debtor can carry out the plan without such discrimination; (3) Whether the classification has been proposed in good faith; and (4) The nature of the treatment of the class discriminated against." *In re Williams*, 253 B.R. 220, 225-26 (Bankr. W.D. Tenn. 2000) (citing 2 Keith M. Lundin, Chapter 13 Bankruptcy § 4.61, p. 4 132 (2d ed. 1994); *In re Riggel,* 142 B.R. 199, 202 (Bankr. S.D. Ohio 1992).[4]

A majority of courts have held that § 1322(b)(1) limits the ability of a debtor to cure and maintain unsecured long-term debt when such special treatment unfairly discriminates against other unsecured claims. This issue has been addressed by bankruptcy courts primarily in the context of student loan claims where a debtor may have significant long-term unsecured debt that he wishes to classify and treat differently than other general, unsecured claims. A majority of courts have held that unsecured claims treated under the "cure and maintain" provisions of § 1322(b)(5) are subject to the unfair discrimination analysis of § 1322(b)(1). *See In re Precise*,

---

[4]"The determination of unfair discrimination lies within the discretion of the bankruptcy judge and is to be made on a case by case basis." *In re Williams*, 253 B.R. at 226 (citing *Groves v. LaBarge (In re Groves)*, 39 F.3d 212, 214 (8th Cir. 1994).

501 B.R. 67, 70-72 (Bankr. E.D. Pa. 2013) (citing Hauser, *Separate Classification of Student Loan Debt in Chapter 13*, 32 Am. Bankr. Inst. J. 38, 39 (April, 2013)).

Applying this reasoning, a majority of courts have held that in the absence of unusual circumstances, student loans may not be treated more favorable than other general, unsecured debt. *Id.* at 71-72. This is true even though a strong argument can be advanced as to why a debtor should be permitted to discriminate against other unsecured creditors when proposing different treatment for a non-dischargeable claim in a Chapter 13 plan.[5] None of these considerations, however, were present in this case in 2007 when the Second Amended Plan was confirmed. There is no apparent reason why Debtor would have wanted to treat CadleRock differently than he treated other general, unsecured creditors. Nevertheless, whether through inadvertence, miscommunication, or some other reason, Debtor proposed a plan which provided that he would continue to make regular payments on the Note. The Second Amended Plan should not have been confirmed absent a finding that the treatment of CadleRock's claim did not discriminate unfairly against other similarly situated creditors. Still, it was.

In *In re Szostek*, 886 F.2d 1405 (3d Cir. 1989), the Court of Appeals for the Third Circuit held that a creditor who sought revocation of confirmation was bound by the confirmed Chapter 13 plan even though it did not apply the present value requirement of § 1325(a)(5)(B)(ii) in determining the amount of the creditor's claim. *Id.* at 1406. The Court instructed that "although prior to confirmation the bankruptcy court and trustee do have a responsibility to verify that a Chapter 13 plan complies with the Bankruptcy Code provisions, after the plan is confirmed the

---

[5]*See In re Harding*, 423 B.R. 568, 576 (Bankr. S.D. Fla. 2010) (discussing the requirement that a bankruptcy court balance the competing aims of a debtor's fresh start and fairness to creditors in the context of the treatment of student loans in Chapter 13 plans).

Case 1:15-bk-00081-MDF    Doc 74    Filed 12/01/15    Entered 12/02/15 09:48:30    Desc
Main Document      Page 7 of 9

policy favoring the finality of confirmation is stronger than the bankruptcy court's and the trustee's obligations to verify a plan's compliance with the Code." *Id.* As CadleRock points out, this Court has relied on *Szostek* to support the conclusion that debtors, as well as creditors, are bound by the terms of a confirmed plan. *In re Woltman*, No. 1:07-bk-01647MDF, 2008 WL 5157477, *2 (Bankr. M.D. Pa. November 18, 2008); *In re Bubczyk*, Ad. No. 1:11-ap-00235MDF, 2012 WL 425332, *2 (Bankr. M.D. Pa. February 9, 2012). The Court of Appeals for the Ninth Circuit has explained this policy as follows:

> A bankruptcy discharge order is a final judgment and, even without the special protection of section 1327(a), a final judgment cannot be ignored or set aside just because it was the result of an error. Errors commited during the course of litigation must be corrected by way of a timely appeal. We have therefore "recognized the finality of confirmation orders even if the confirmed bankruptcy plan contains illegal provisions." (citations omitted). Were the rule otherwise, no judgment would ever be conclusive, as a party aggrieved by it could endlessly re-litigate errors supposedly committed by the trial court.

*Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d 1193, 1199 (9th Cir. 2008) *aff'd sub nom*, *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010).[6] Thus, the provision in Debtor's confirmed plan that regular payments would be made on the Note were binding on Debtor.

---

[6] In *Espinosa*, the Supreme Court affirmed the Ninth Circuit's holding that a final order confirming a plan is not void even if it includes illegal provisions when the parties are afforded a full opportunity to litigate and fail to do so. The Court, however, did find that the Ninth Circuit committed error when it held that a bankruptcy court must confirm a plan with an illegal provision if no party objects. "[B]ankruptcy courts have the authority indeed, the obligation to direct a debtor to conform his plan to the requirements of [the Code]." *Espinosa*, 559 U.S. at 277.

8

Case 1:15-bk-00081-MDF    Doc 74    Filed 12/01/15    Entered 12/02/15 09:48:30    Desc
Main Document    Page 8 of 9

### III. Conclusion

For the reasons set forth above, Debtor's Objection to CadleRock's proof of claim will be overruled. CadleRock's general, unsecured claim of $54,668.71 will be allowed. An appropriate order follows.

By the Court,

_Mary D. France_
Chief Bankruptcy Judge

Date: December 1, 2015